```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

```
DAVID SOLAN,                    :
                                :
         Plaintiff              :
                                :
         vs.                    :   CIVIL NO. 1:CV-06-0049
                                :
                                :
MS. V. RANCK, nee Hursh, et al.,:
                                :
         Defendants             :
```

*M E M O R A N D U M*

I.   *Introduction*.

We are considering the pro se plaintiff, David Solan's, motion to compel discovery on certain of his discovery requests. Solan, an inmate at FCC-Peterburg, Petersburg, Virginia, was formerly an inmate at FCI-Allenwood, and the following claims have been made against Allenwood officials and officers: (1) a Fourth Amendment claim for being removed from the shower on June 10, 2005, and marched back to his cell on Unit 4-A while naked and shackled; (2) an equal-protection claim alleging that the forced removal from the shower and the naked escort was because Plaintiff is an elderly, peaceful Jewish intellectual; (3) four retaliation claims, all based on Plaintiff's having filed grievances about the June 10 incident and thereafter: (a) Plaintiff's transfer to USP-Canaan; (b) his placement in a segregation cell from July 5, 2005, through July 7, 2005, with a mentally disturbed inmate who caused Plaintiff

emotional suffering; (c) the refusal to return Plaintiff to the cell he occupied before July 3; and (d) after his return from an operation, an attempted placement on July 7 in a six-man cell with incompatible cell mates and filthy conditions and then when he refused this assignment, placement in segregated housing with a mentally disturbed cell mate in filthy conditions.

II.     *Discussion*.

The following discovery requests are at issue. Request No. 5 asked for the number of inmates who were placed in the segregated housing unit or transferred from USP-Allenwood as a result of the prison disturbance on June 7, 2005.[1] It also asked for the number of inmates at Allenwood at the time of the disturbance.

In his motion, Plaintiff states that he asks for clarification because of a discrepancy in the number of inmates Defendants list for June 8. We believe, however, as Defendants noted in their objections, that this information is irrelevant to Plaintiff's claims. In any event,sufficient information was provided in the answer (and Defendants also answered that no records were kept of inmates transferred out of Allenwood for the time in question).

---

[1] The June 7 prison disturbance led to a five-minute limit on showers that gave rise to the circumstances leading to the Fourth Amendment claim for the June 10 shower.

Request No. 7 asked for the full names, ranks, duties, and last known mailing addresses (if not privileged) of former correctional officers who worked at Allenwood and who had regular contact with inmates during June and early July of 2005. Defendants objected to request on the grounds of relevancy, vagueness, confidentiality, and the overly broad nature of the request. Plaintiff argues he needs the information to prove his allegation that the "assault" on him was well known throughout the prison and that these ex-officers could also testify to the existence of the videotape of his removal from the shower and that the tape had been viewed by many officers. We agree with Defendants that the information about the former correctional officers should remain confidential. Plaintiff can also prove knowledge about the incident by other witnesses.

Request No. 8 sought information about other correctional officers (aside from defendants Clarkson and Bittenbender) who were present on June 10 and who assisted in removing Plaintiff from the shower. Defendant answered this request by asserting there is no documentation of other staff names and that their response to Request No. 6 lists all those who were assigned to Unit 4-A at the time. Plaintiff argues that there was indeed a third officer who helped remove him from the shower and one of the defendants, Clarkson, Ranck or Bittenbender, should know about this officer. We reject

Plaintiff's point; Defendants have asserted they can provide no other names.

Request No. 10 requested "all information concerning all F.C.I. Allenwood prison security videotapes taken on the morning of June 10, 2005, in or around Unit 4-A, including the names of those correctional officers assigned to the custody of he videotapes throughout their chain of custody, the official record of all officials who viewed the videotape, any information about people viewing them 'unofficially,' whether any of these videotapes are still available, and the identity of the person or persons responsible for ordering them to be erase (sic), spoliated, or destroyed and the date of such destruction."

Defendants' answer was: "There are no video tapes of Unit 4-A which exist for June 10, 2005. All video tapes that are not maintained for security purposes are overwritten and subject to rotation." (Doc. 88).

On his motion, Plaintiff argues that the answer is insufficient because it "does not mention written records of the chain of custody of these videotapes, only that they no longer exist," and Defendants should be required to produce the record of the chain of custody because anyone in that chain could have seen the tape and thereby have been a witness to the incident. Defendants reply that: "No chain of custody record exists, as the tapes are automatically overwritten without review of the

previously recorded information. Defendants are not aware of any individual reviewing the tape." (Doc. 81, p. 4).

Defendant will be required to file a supplemental answer to Request No. 10. The request did ask about chain of custody, and if none exists, Defendants should respond by saying so in an answer signed in accord with Fed. R. Civ. P. 33(b)(1), not in an opposition brief.[2]

Request No. 11 sought "all records pertaining to federal inmate Alonzo Johnson . . . with reference to what charges or SHU placement he experienced subsequent to the events of June 10, 2005 in Unit 4-A . . . ." Defendants objected on the basis of relevancy and confidentiality of Johnson's records. On his motion, Plaintiff argues that Johnson suffered the same Fourth Amendment violation as he did and hence the information is relevant. In opposition, Defendants offer to supplement their answer with Johnson's last known address, a public record. We think this offer is sufficient to resolve the dispute over Request No. 11.

Request No. 12 sought "all incident reports" written against Allenwood inmates on June 10, 2005, the resolution of

---

[2] Plaintiff complains that Defendants' responses to his requests were not certified and not filed with the court. Discovery responses do not have to be filed with the court, but it does appear that Joseph McCluskey, who provided the answers, did not make the required oath. *See* Fed. R. Civ. P. 33(b)(1). He will be required to file an affidavit or penalty-of-perjury declaration affirming to the truth of the answers to the discovery requests.

5

the reports, "the reporting officers, exact infractions cited, names, registration numbers, under what circumstances the infractions occurred, whether placement in the SHU ensued, punishments imposed, etc." This information was also sought for inmates placed in the SHU on June 10 for reasons other than receiving an incident report.

Defendants objected that this request was overly broad and sought information that was irrelevant and confidential. On his motion, Plaintiff limits his request to the four inmates who were sent to SHU on the morning of June 10, arguing that the details of their disciplinary actions might "reveal[ ] a pattern of overreaction" that "would suggest that the officers in Unit 4-A . . . were "riot[ing] . . . against the inmates there at that time." (Doc. 77, p. 4). We agree with Defendant that the information sought is irrelevant since it would bear solely on the circumstances of those other inmates and not on what happened to Plaintiff.

Request No. 15 sought: (1) "the full notes, reports, submissions, etc. of SIS Lt. Lyons, concerning his investigation of the June 10, 2005 incident at F.C.I. Allenwood involving the Plaintiff, including those notes and reports on his interview with the Plaintiff on Wednesday, March 22, 2006"; (2) all affidavits . . . obtained in conjunction with the investigation"; and (3) "a copy of his full submission to the Central Office of the BOP which followed the investigation."

6

Defendants objected to this request "as seeking privileged and confidential information which could jeopardize the security of the institution." (Doc. 88, p. 10). On his motion, Plaintiff points out that in their response to Request No. 13, Defendants claimed to have given him the report of SIS Lt. Feltman's investigation into the incident. Thus, disclosure of Lt. Lyons's report should not create any greater jeopardy. Alternatively, Plaintiff requests an in camera review of the report and other documents requested. We agree with the latter request and will require Defendants to submit for in camera review any documents responsive to Request No. 15.

Request No. 18 sought "the names, registration numbers, out and in dates, living quarters, and medical treatment of all inmates at F.C.I. Allenwood for the last 15 years, who had emergency outside hospital visits due to a sports or other accidental injury, where absolutely no suspicion existed of any infraction committed in conjunction with their injury." Request No. 19 sought information about the inmates identified in Request No. 18 who were placed in the SHU upon their return to Allenwood.

Defendants objected to both of these requests by arguing that they were irrelevant, overly broad, and not likely to lead to the discovery of admissible evidence. On his motion, Plaintiff contends the information is relevant to his claim that he was retaliated against for complaining about his treatment on

7

June 10 by his eventual placement on July 7 after his return from the hospital in segregated housing rather than in his own cell. In his view, the discovery might show that inmates who had made complaints were sent to the SHU, while others who had not made complaints were not, thereby establishing retaliatory intent.

In opposition, Defendants reiterate their objection that the request is overly broad and state: "These requests seek information related to inmates who were injured, had to visit a hospital, and were subsequently placed in the SHU. Defendant does not keep statistics as to this type of information. To research this would require Defendants to review every inmate's file for the last 15 years (some of whom are no longer housed at FCI Allenwood). The expense and burden of such an undertaking outweighs any likely benefit." (Doc. 81, p. 5).

We agree with Defendants that this discovery would be unduly burdensome. It would require reviewing for a fifteen-year period the entire record of each inmate who had passed through Allenwood to see if he had been sent out for hospital care and then determine if he had been sent to the SHU at about the same time. Further, the records would have to show that there was "no suspicion" of an "infraction" by the inmate. Even if we limited the number of years to be searched, this would be a burden that would not produce a likely benefit in accord with the requirements of Fed. R. Civ. P. 26(b)(2)(iii).

Request No. 22 sought "all official records of inmate cell and bed assignments for Unit 4-A at F.C.I. Allenwood from July 3 to the evening of Thursday, July 7, 2005 (inclusive), with special reference to all changing cell occupancy and to all available (empty) beds and cells in that unit during that time frame, and also provide the names(s) of the correctional official(s) responsible for those cell assignments and changes and empty beds during that period."

Defendants objected to this request by arguing that it was irrelevant, overly broad, and not likely to lead to the discovery of admissible evidence. On his motion, Plaintiff contends the information is relevant to his claim that he was retaliated against for complaining about his treatment on June 10 by his eventual placement on July 7 after his return from the hospital in segregated housing rather than in his own cell. The information would show what beds were available in his unit and which official was responsible for their availability. If a bed were available that met Plaintiff's medical needs (or was made unavailable) by defendant Levi or Ranck, this would support Plaintiff's claim that his placement in segregated housing on July 7 was retaliatory.

In opposition, Defendants repeat their objections that the request is overly broad and seeks irrelevant information.

However, they offer "to provide information on Solan's cell assignment on July 7, 2005."[3]

We reject Defendants' position. The time frame is only five days and only for Unit 4-A. The discovery may also produce relevant evidence concerning available beds on the unit that might have accommodated Plaintiff's alleged medical needs.

Request No. 24 sought the history of where Plaintiff has been incarcerated in the federal prison system, including "intermediate transfers" and the reasons for the redesignations.

Defendants objected to this request by arguing that it was irrelevant, overly broad, and not likely to lead to the discovery of admissible evidence. On his motion, Plaintiff contends that Defendants have already supplied him with the information by an exhibit they submitted in connection with their motion for summary judgment, and he now seeks only an update from March of 2006 through the end of 2006. We will grant the motion, limited to the current information sought.

Request No. 28 essentially sought the name(s) of the official(s) who recommended in or about June 2005 Plaintiff's transfer to USP-Canaan, the exact date of the recommendation, and the reason for the recommendation. The request also seeks the names, registration numbers and living quarters of all other

---

[3] They do so in light of our ruling on January 18, 2007, allowing the retaliation claim arising from the events of July 7 to proceed.

Allenwood inmates who had similarly been recommended for transfer to Canaan in June 2005 or perhaps December 2004.

Defendants objected that the request was irrelevant, overly broad and violated the Privacy Act. On his motion, Plaintiff argues the information sought is relevant to the retaliation claim based on his transfer to Canaan. In his reply brief, he also points out that Defendants did not brief his motion to compel an answer to this request. Contrary to Defendants' position, we believe the information sought is relevant to the transfer-to-Canaan retaliation claim and that the discovery is not overly broad. To protect any privacy interests, Defendants can redact the names and other identifying information of other inmates recommended for transfer to Canaan in December 2004 and June 2005.

Request No. 30 asked for the number of inmates who had been redesignated in the past ten years from Allenwood to Canaan for the possible reasons given in response to Request No. 28: an incident report, a tenure of less than ten months in Allenwood, or a history of many previous transfers for nondisciplinary or nonsecurity reasons. Request No. 31 asked for a breakdown for the inmates redesignated less than ten months after coming to Allenwood and more than ten months after coming to Allenwood.

Defendants objected to both of these requests by arguing that they were irrelevant, overly broad, and not likely to lead to the discovery of admissible evidence. On his motion,

11

Plaintiff argues it is statistical evidence he needs to show retaliatory intent. We agree with Defendants and will not require discovery of this information.

>    We will issue an appropriate order.

>                                    /s/William W. Caldwell
>                                    William W. Caldwell
>                                    United States District Judge

Date: March 8, 2007

```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

DAVID SOLAN,                       :
                                   :
     Plaintiff               :
                                   :
     vs.                     :      CIVIL NO. 1:CV-06-0049
                                   :
                                   :
MS. V. RANCK, nee Hursh, et al.,   :
                                   :
     Defendants              :

*O R D E R*

AND NOW, this 8th day of March, 2007, upon consideration of Plaintiff's motion (doc. 75) to compel discovery, it is ordered that:

    1.  Joseph McCluskey shall affirm by affidavit or penalty-of-perjury declaration that all answers to Plaintiff's "First Discovery Requests," are true in accord with Fed. R. Civ. P. 33(b)(1).

    2.  Defendants shall serve a supplemental answer to Request No. 10 stating whether or not there was a record of a chain of custody for the videotape and a record of such a chain of custody.

    3.  Defendants shall serve a supplemental answer to Request No. 11 stating the last known address of inmate Alonzo Johnson.

    4.  Defendants shall submit to the court for in camera review all documents responsive to Request No. 15, the request focused any report by Lt. Lyons, concerning his investigation of the June 10, 2005 incident at F.C.I. Allenwood involving the Plaintiff.

    5.  Defendants shall serve a supplemental answer to Request No. 11.

    6. Defendants shall serve a supplemental answer to Request No. 11. limited to Plaintiff's prison transfers beginning in March 2006.

    7. Defendants shall serve a supplemental answer to Request No. 28 listing those inmates who had been recommended for transfer to USP-Canaan in December 2004 and June 2005 and the reason for the recommendation.

    8. In all other respects, Plaintiff's motion to compel is denied.

/s/William W. Caldwell  
William W. Caldwell  
United States District Judge
